Good morning, Your Honors. My name is Jonathan Kaufman. I represent the petitioner Dolores of the BIA denying his motion to reopen his deportation proceeding. And his petition raises issues of the sufficiency of the notice given to him regarding the nature of his deportation proceeding, the date of a hearing, the purpose of the hearing, and the ultimate outcome of the deportation case. He appeared at a deportation hearing in August of 1990 before an immigration judge, unrepresented by an attorney. He appeared presumed to a written hearing notice. At the hearing, the judge determined that the proceeding was going to be conducted in Los Angeles rather than have a venue change to another immigration court. He determined that Mr. Lemos desired an attorney, and he instructed Mr. Lemos to return on September 28, 1990. He never told Mr. Lemos why he was returning. He didn't inform him that the appointment on September 28, 1990 was a deportation hearing. He never informed Mr. Lemos of the consequences if he did not appear. Instead of telling him that he could be deported if he didn't appear, he gave him an ambiguous admonition that if you fail to return, the court may proceed in your absence already appointed. We deal with transcripts all the time, and I think it's probably clear to everybody that nobody actually said what's reported in the transcript, but the transcript is what we've got. How do you parse that sentence, though, to say anything other than the fact we're going to come back on September 28 and we're going to proceed? Well, he was discussing with Mr. Lemos the fact that he needed an attorney, and he told him he was going to – the only thing that's expressly told to Mr. D.S. Lemos is that he's going to reschedule to give him an opportunity to obtain an attorney. He didn't tell him that he was being rescheduled for a merits hearing in his deportation case. Absolutely. Whatever he was there for in August, he's going to be back for in September. But he didn't expressly tell him, and he also didn't really give him clear notice because he didn't give him written notice of the hearing. There was a lot of cross-messages that were given to the petitioner. He was given a written notice initially to appear at the hearing. The immigration judge informed him that all future notices would be sent to him, that would be mailed to him. And then when Mr. D.S. Lemos left the court, he didn't have any pieces of paper in his hand. He wasn't given any written notice at all. He was just given this ambiguous advisals by the immigration judge. Because the immigration judge didn't have some sort of standard form that would give him the information again that he got before the first hearing, I guess. Well, it was the practice of the immigration court to serve a written hearing notice each time that a hearing was scheduled. I mean, that's what the BIA case law shows. That's what Mr. D.S. Lemos, that's what this administrative record shows. He was given a written hearing notice. He got a notice before the first hearing that was continued, right? He received the one at which the I.J. continued it to a later date. He received written notice of the first hearing, not the second hearing. But when the I.J. verbally sets it to be heard on a different date in his presence, he doesn't give him any written paper with a repeat disclosure or anything? No. And he never, except for one brief passage, he never really even uses the word deportation throughout his hearing and his discussions with Mr. D.S. Lemos. He never says you're being scheduled for a deportation hearing. What did he think he was there for that day? It's unclear what he understood because at the time that he was appearing in front of the immigration judge, he had also applied for asylum at an I.N.S. office in Fresno. Mr. D.S. Lemos had arrived in the United States in June. Within a month of his entry, he applied for asylum in the United States. He then receives a written hearing notice to go to a deportation hearing. An immigration judge doesn't determine if he has an order to show cause in his possession, doesn't read the contents of the order to show cause to him, doesn't inform him of any of his rights in the proceeding other than his right to an attorney, tells him to come back on another date, doesn't really tell him why, doesn't tell him that he has the right to apply for any relief there at that hearing. Maybe another fact. I was trying to figure out why wouldn't he show up again because we looked at the record. And it looked to me like, and he had multiple things going on. Along the way, it looks like he receives in the mail a work permit that says, okay, you can work. When did that fall in the chronology? It happened right after he applied for asylum. When he applied for asylum, he was issued a work permit. And when he applied for asylum, he was told, as the immigration judge told him, go home. We'll contact you in the mail when you're required to do something. So everybody's telling him, you're going to be contacted in the mail. You're going to receive written notice. I know the asylum meeting was, what, July? Yes. And then he gets this notice to appear in August. He appears in August. He's told to come back in September. Do you know precisely when he gets the work permit? He was issued the work permit when he applied for asylum. When he applied for asylum. The other issue that's raised here is the issue of the service of the deportation order itself. The administrative record is a curious one in this case. Before this motion was filed, the motion to reopen was filed with the immigration court, I obtained a copy of the record proceeding from the EOIR. I also obtained a copy of Mr. Diaz's record from the INS, two different agencies, two different administrative records. Neither of these records contained the deportation order that was issued against Mr. Diaz-Lemmos. They contained an order issued to another alien named Delgado. When I filed the motion to reopen, I asserted that the order of deportation was not, in fact, served on Mr. Diaz-Lemmos, that the Delgado order was served on him. That the case had to be reopened, if for no other purpose, than to serve him with a copy of his deportation order. The factual assertion that the record did not contain the Diaz-Lemmos order was not contested by the INS. It was not contested by the immigration judge. Neither the INS nor the immigration judge commented on the factual assertion that the record contained the incorrect order. After the... We were talking about the record that you obtained. My motion to reopen. Yeah. I obtained through a FOIA. FOIA, yeah. A copy of the record of proceeding. When I filed the motion to reopen, I alleged... Well, you requested a copy. Yes. And you got something. Yes. And then when I filed the motion to reopen, I alleged that the record did not contain the Diaz-Lemmos order. That factual allegation was not contested by the INS or the immigration judge. The immigration judge's order does not even comment on the assertion. When I filed the appeal to the BIA, the notice to appeal form repeated the assertion that the order was not contained, that the correct order was not contained. I don't see how that gets you anyplace other than to say that what you got on your FOIA request didn't contain the order that is in... that I understand is in this record. Well, but the question is what is... The FOIA, they're... No, they get backed up and they make a statement. Well, but what it doesn't explain is why both the INS and the OIR FOIAs would contain the incorrect order and why the INS FOIA would have the cover letter addressed to Mr. Diaz-Lemmos followed immediately by the Delgado order. What that indicates to me is that the orders were switched at some point on that day, on September 28, 1990, and that the order mailed to the INS was the Delgado order. Mr. Diaz-Lemmos attests that he didn't receive any order at all. I mean, how long... Oh, go ahead. I... How long... Mr. Gordon. Well, I just want the perspective of after the in absentia hearing that results in the order of deportation, how long a period of time passes before your client, you know, comes forward and you're making the motion to reopen or whatever? About 14 years. So now, does that have any significance in terms of our review here? I'm about to run out of time. You may answer that. All right. When Mr. Diaz-Lemmos applied for asylum in Fresno, he did not indicate on the form that he had a prior immigration file number. He told the Immigration Service that he had been snared and released on a bond. They opened up another file for him. Immediately following the filing of that asylum application in 1990, the Immigration Act was amended to provide for something called temporary protective status, which stopped the deportation of Salvadorans. He then applied for what was called TPS. Following TPS, there's also a case in district court called ABC, American Baptist Churches. Yes, Salvador, yeah. Exactly. He proceeded for 14 years under this immigration file number, which was opened up in Fresno. He never knew that he had been ordered deported. And finally, when he got after 14 years of living in the United States, being a law-abiding person, paying his taxes, he applied for his residency through a law called NACARA. He appears at the NACARA interview thinking he's going to receive his green card, and on that date, for the first time, yes, and for the first time, he's told, oh, you missed the deportation hearing 14 years ago. You've been ordered deported. We have no jurisdiction over your case. And then he went out and found a lawyer for the first time. And then I obtained a record, and this is what I found. Well, let me ask you this. The ABC, the settlement was as a result, as I recall, being the only person on this panel who was actually around then, because of the situation in El Salvador and because there was essentially a stay. Everything just went to ground to a halt. But is there anything in this record that indicates that as of that time, this alien had a meritorious grounds, individualized grounds for asylum? There's his asylum application. I mean, he was an ABC class member. Yeah. And so he was eligible, but the problem he has for, and ultimately all these cases have become NACARA applications, which are applications for permanent residence. Yeah. And the problem he has is that because he had an outstanding deportation order, the asylum office where he appeared for his NACARA interview had no jurisdiction. He has to make the application to an immigration judge. And when the NACARA law came into effect and the regulations were promulgated, there was a brief window of opportunity to make a motion to reopen, specifically for NACARA. And because he didn't know that he had been ordered deported, he didn't file a timely motion to reopen. Thank you. Thank you. Let me ask you this. What do you disagree with that was just said? With regard to the NACARA application, Your Honor? My understanding is that, yes, he did not, I believe the record shows that he did not file a timely application for NACARA in the first place. However, I'm not positive about that. But he did file one. He did, I think, eventually file one. But I believe it was untimely. So it may not have been acceptable for that reason as well. I think what this case really comes down to is whether the petitioner has demonstrated that the immigration judge abused his discretion when he found that the petitioner was able to demonstrate reasonable cause for not appearing for his September 28th hearing. Why would there be a system where there's not something given him in writing, you know, when he's told verbally, we're continuing the date, that they wouldn't hand him some kind of form that eliminates all these issues? Right. Well, I believe that the system was actually changed a couple of years. Well, the effect, the regulation and the law became effective actually 22 months after this petitioner's case. But where written assurances or written explanations of his duties are provided now, if the case is continued, there is a written order that is provided. However, at the time, and as petitioner admits in his brief, there was no regulation and no law that required any type of written assurances. And furthermore, as the petitioner admits, he was told at his hearing the date, the time and the place when he needed to return for his deportation proceedings. Now, what is the, why is it, help me, because these records get a little, why did he not ever get the notice that he had been, that there had been a deportation? The notice, his deportation order? It's unclear. He alleges that he did not receive it. The record that's on file with this Court shows that the deportation order was sent to his address of record as required. So it's not clear why he wouldn't have received it. He doesn't make any allegations that he had trouble receiving mail at that location or any other reasons why he would not have received it through the regular course of the mail. And even if his allegations that are true, that the wrong order was appended to the cover letter which had his name and indicated that there was a deportation order that was issued in his case. That was in the FOIA request? That's correct, Your Honor. Even if that were true, it doesn't explain why he never received at least that correspondence. And there's no allegations that there was any reason why he wouldn't have received  it, that he didn't move and fail to give notice of his new address or anything like that. It's just unclear from the record. In fact, the record that's before this Court would indicate that proper notice was sent. However, that issue is really kind of a red herring because all it does is lead him right back to where we start this case, and that is whether he demonstrated reasonable cause for failure to appear at that September 28th hearing. Because even if the deportation order was reissued, the next step for him to take would be to move to reopen his in absentia deportation order or to appeal that decision and argue that he had reasonable cause for failing to appear at that hearing. So really the only issue that need be decided by this Court is whether he has now demonstrated that the immigration judge abused his discretion in finding that just not getting a written notice is reasonable cause for deciding not to follow the instructions that he was provided by the immigration judge. The record shows that the immigration judge ascertained that the petitioner spoke Spanish. Everything at the proceedings was translated in Spanish. He explained the purpose of the hearing was to determine if he must leave the United States. He asked him, do you understand this? He says, yes. He asked, do you wish to have additional time for an attorney? He says, yes. So he, the immigration judge then resets the case to September 28th, 1990, explains the availability of legal services, notes that if he can't afford or find an attorney, that he would have to speak for himself at the next hearing, and warned that if he fails to return to court, the court may proceed in his absence. After all this, he asks, do you understand? And the petitioner says, yes. Now, under these circumstances, the petitioner cannot come back 11 years later and say, I didn't really understand. And, in fact, because I didn't get a written notice, which I admit wasn't required to be provided to me, I have demonstrated that the immigration judge has abused his discretion in finding that there wasn't reasonable cause for my failure to appear. I think … The colloquy that you just described, that's all on the record that we've got? Yes, Your Honor. His discussions before the immigration judge are within the administrative record that are on file with this Court, and I'm looking for a particular pinpoint site, but I don't see one right now, Your Honor. The transcript is very short. I happen to see a page number on it, so I don't have an AR number, but it's only a six-page transcript and really only a four-page of dialogue. Correct, Your Honor. And it does include the sentence that says, The Court may proceed in your absence already appointed. That's correct, Your Honor. Heaven knows what that means in Spanish. The pieces do link together. I will say that the potential failure to receive a deportation order, I think, at least has to be looked at reasonably. And one additional thing that was noticed that I don't think was talked about in the briefs, when I looked at the decision of immigration judge with his name on it, it does not appear to have the right date for his entry into the United States. You've noted that maybe some paper was misfiled, and that's why it wound up in the FOIA response. We all work for the government, too, and we misfile things. And can it fairly be said with confidence that he received a deportation order such that he would have known to do something or to apply to appeal or to apply for a reopening at that time, given the state of the record? I think, based on the certified administrative record that's before this Court, the evidence shows that his deportation order was mailed to his last known address as required, and that that should be sufficient to show that he did receive or that the government met its burden with regard to providing that notice. To the extent that Petitioner argues that he raised this issue before the Board or before the IJ, I would note that he never asked the IJ or the Board to supplement the record that was before it or brought forward this allegedly mismatched notice of deportation. And as I mentioned before, even if it was a mismatched cover letter with the wrong deportation order, there's no allegation as to why that didn't reach him. I think it's not that, after he had obtained counsel and bad things happened to him. Right. Well, that may be the case, but he raises these issues before. He claims that he raised this issue before the Board regarding the mismatched documents, but he never sought to supplement the record or brought in this mismatched record. On the hearing before the IJ, the initial hearing at which it's continued, are those routinely transcribed, or are they just transcribed when there's like a later motion? In other words, how do we get this transcript? I believe the transcript was appended to the Petitioner's brief in this case. How is it that it came about? How does the agency make it up? Do they do it at the agency or do they have some kind of cassette tape that goes into archives, and if there's an appeal at a later time, it's transcribed? I'm not sure, Your Honor, with regard to the time frame of this particular case. However, I believe the current procedures are that if a case is appealed to the Board, then a transcript is generated from a tape. If a transcript has something that we can't make sense of, like I'm going to proceed in your absence as appointed, should he get the benefit of the doubt of that and just reopen it because of that? I don't know. If that's what was said, what would that mean? I don't believe so, Your Honor. First, the immigration judge isn't required to tell him exactly what's going to happen if he doesn't show up. I understand that, but if he says something and if it's nonsensical or it might be misleading, in other words, what does it mean if the judge says to him, we'll proceed in your absence as appointed? If I can't make sense out of that, maybe he couldn't make sense out of it. That would be fine, Your Honor. If that's what was actually said, then wouldn't that mean he'd have a right to get it reopened? No, Your Honor. I don't believe so because all that's required is that he be given notice of the time, date, and place where he's expected to show up next. That is clear. I see your position. Yes, Your Honor. Is there any question about his being a member of the class that was involved in the ABC settlement? I'm not so sure that that's even before this Court, Your Honor. I believe the record reveals that he did not timely file an application for NACARA and, therefore, wouldn't be eligible. He is currently still under the TPS program, which was extended into 2005, I believe, most recently because of natural disaster issues in El Salvador rather than other issues that had led to the TPS program there previously. Is there anything here on deportability because of any crime or anything of that nature? No, Your Honor. So he's just being deported because he didn't really have a right to be here? That's correct, Your Honor. Well, yes, Your Honor. He illegally entered in January of 1990. Right. Okay. Okay. Thank you, Your Honor. Thank you. Do you have two minutes left if you want to say anything you don't have? Thank you. Let me start using that by asking, and I apologize. The cases begin to blend together for a while. Do you apply to have this transcript prepared and submitted? I need an application, a motion to the Court to modify the record with the transcript, and the Court ordered me to have the transcript prepared. So that's why we have it, but not within the administrative record. That's right. It was the motions panel of this Court that said do the transcript. Yes. And to do the transcript, maybe you can ask the technical questions. Is it done from a tape that's just kept over the years? What happens, in my experience, I've been preparing for the immigration court for more than 20 years, is they're supposed to record all the hearings. The recordings are stored indefinitely, and they're transcribed if there's an appeal or, in this case, a motion to reopen. Just a couple of things. The application that you made to our court, was it entirely ruled upon or is some part of it left in front of us with regard to the records? No. Well, yes. My motion to modify the record, to switch the deportation orders, I'm asking the Court to switch it as a deportation panel. So that's still pending as far as you understand. Yes. What would be the significance if we – this issue is kind of eluding me is what I'm asking. If we said, okay, change the record and switch in the order of the other guy, what would happen next? I mean, what would be the – what would we have to do then? You would have to remand it to the Board of Immigration Appeals for service of the order. And if the Board of Immigration Appeals serves the order, it would trigger a new 30-day period to appeal. Serves the proper order, you mean? Yes. And then Mr. Diaz-Lemes would have 30 days to file an administrative appeal to the BIA, and at that point he could ask for Nicara because he would no longer be under a final order of deportation. The government says that he filed his – his Nicara application was not timely filed. There is no deadline for filing a Nicara application. The only deadline is in the case of an alien who was ordered – was under a final order of deportation at the time the law was promulgated,  But if an alien is not in deportation proceedings, there is no – it's open-ended. And if we were to remand this for whatever purpose, he could still file a Nicara? Because he would no longer be ordered to court, he could apply for Nicara. And, Your Honor, there's one other point, if I may. What is the governing statute of regulation on Nicara that covers that? It's 1240-point-something. 8 CFR 1240-point-something. The government says that under the – there is no law that requires an immigration judge to give an alien any notice other than the date, time, and place of his hearing. And that is incorrect. 8 U.S.C. 1252 requires that an immigration judge also give an alien notice of the nature of the charge. So they can't just say, You'll be back here, and not tell them why. They also have to give the nature of the charge. That's the statutory language. And we would argue, Your Honor, that nature of the charge includes notice of consequences if he failed to appear. Thank you. The Court appreciates the arguments in the case. The case is now being submitted for decision. The next case, Almers v. Ashcroft, is submitted on the briefs. We'll hear the next case for argument, which is Happier v. Chandler. I'm sorry, Your Honor, did you say Happier? Yes, I did. Sorry, I'm muttering a little bit.
judges: Schroeder, Gould, Clifton